UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**NUMA C. HERO & SON, LLP**                 **CIVIL ACTION**

**VERSUS**                                  **NO. 18-6470**

**BRIT UW LIMITED, ET AL.**                 **SECTION "B"(2)**

ORDER AND REASONS

Before the Court is Plaintiff Numa C. Hero & Son, LLP's motion to remand. Rec. Doc. 9. Defendants Brit UW Limited and Erwin Insurance Agency, Inc. filed oppositions thereto. Rec. Docs. 13, 14. Plaintiff then sought, and was granted leave, to file a reply memorandum. Rec. Doc. 22. For the reasons discussed below,

**IT IS ORDERED** that Plaintiff's motion to remand (Rec. Doc. 9) is **GRANTED** and the above-captioned matter is **REMANDED** to Civil District Court for the Parish of Plaquemines.

**IT IS FURTHER ORDERED** that Defendant Erwin's motion for summary judgment (Rec. Doc. 12) is **DISMISSED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike (Rec. Doc. 18) is **DISMISSED AS MOOT.**

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves a dispute over whether fire damage at a property in Belle Chasse, Louisiana, is covered by an insurance policy. *See* Rec. Doc. 1-1. Plaintiff Numa C. Hero & Son, LLP (Hero LLP) is a general contractor in Louisiana. Rec. Doc. 1-1 ¶ 6. To protect its business, Hero LLP carried property and general

1

liability insurance. In 2013, Hero LLP moved its insurance business to Defendant Erwin Insurance Agency. *Id.* ¶¶ 20, 21, 25. As part of that process, Hero LLP explained that it wanted "comprehensive quality insurance coverage" for its business, which "encompassed repair, remodeling and construction of buildings on its various properties." *Id.* ¶¶ 23, 24. According to Hero LLP's complaint, Erwin made various recommendations and changes to Hero LLP's insurance coverage, including advising Hero LLP that it should cancel a preexisting fire insurance policy because that risk would be covered by the newly-obtained policies. *Id.* ¶ 26. The new policies were underwritten by Defendant Brit UW Limited. *Id.* ¶ 8.

Hero LLP renewed its policies annually, most recently in June 2017. *Id.* Because of this ongoing relationship, Hero LLP and Erwin had regular conversations about Hero LLP's insurance needs, especially when it came time to renew the insurance policies. *See* Rec. Docs. 9-3, 12-16. According to the record currently available, many of these conversations took place between James McLachlan, an Erwin employee, and Jason Dillman, one of Hero LLP's employees. *See* Rec. Docs. 1-5, 9-3, 12-16. In March 2016 and January 2017, McLachlan contacted Dillman about purchasing builders and homeowners insurance for the property at issue in this case. *See* Rec. Docs. 1-5, 9-3. At that time, Dillman was considering purchasing the property in his personal capacity and using the property to build a personal residence. *See* Rec. Docs. 1-5 ¶¶ 5–

6, 9-3 ¶¶ 3, 6. According to an affidavit filed by Dillman, he understood his conversations with McLachlan to concern whether Dillman should purchase insurance individually, not on behalf of Hero LLP. *See* Rec. Doc. 9-3.

In 2017, Hero LLP was building a house at a property in Belle Chasse, Louisiana. *See* Rec. Doc. 1-1 ¶¶ 5, 6. In December 2017, before Hero LLP had completed work on the house, a fire destroyed the house. *See id.* ¶ 7. Hero LLP submitted an insurance claim to Brit for the damage to the house. *See id.* ¶ 10. Brit denied the claim. *See* Rec. Doc. 1-1 ¶ 11. In June 2018, Hero LLP filed suit in Louisiana state court against Brit for breach of contract and, in the alternative, against Erwin for failure to procure the necessary insurance.[1] *See* Rec. Doc. 1-1. Brit timely removed, acknowledging that there is incomplete diversity on the face of the complaint because Hero LLP and Erwin are Louisiana residents. *See* Rec. Doc. 1. Hero LLP then filed the instant motion to remand for lack of subject matter jurisdiction. *See* Rec. Doc. 9.

---

[1] A related case is also pending before the Court. *See Brit UW Ltd. v. Hero*, No. 18-3850 (E.D. La. Apr. 11, 2018). In April 2018, Brit filed a complaint for declaratory relief against George Allen Hero, Patrick Hero dba Numa C. Hero & Son, Ltd., and Numa C. Hero & Son, LLP (Hero entities). *See Brit UW*, No. 18-3850, Rec. Doc. 1 (E.D. La. Apr. 11, 2018). In that complaint, Brit seeks a declaration that it is not liable under the insurance contracts purchased by the Hero entities for the damage caused by the December 2017 fire. *See id.* The Hero entities moved to stay or dismiss Brit's action for declaratory judgment pending disposition of the parallel state court litigation discussed in the instant order and reasons. *See Brit UW*, No. 18-3850, Rec. Doc. 8 (E.D. La. June 4, 2018).

Defendants contend that remand is unnecessary because Erwin was fraudulently joined to defeat diversity jurisdiction. *See* Rec. Docs. 13, 14.

**LAW AND ANALYSIS**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id.* § 1447(c). The above-captioned matter was removed from Louisiana state court on the basis of diversity jurisdiction. *See* Rec. Doc. 1 ¶ 14 (citing 28 U.S.C. § 1332). Diversity jurisdiction is present when "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Here, Plaintiff Hero LLP is a citizen of Louisiana, Defendant Brit is a citizen of England, and Defendant Erwin is a citizen of Louisiana. *See* Rec. Doc. 1 ¶¶ 5-6, 16. Plaintiff has the same citizenship as Defendant Erwin. Therefore, on the face of the complaint, there is incomplete diversity. *See Caterpillar*, 519 U.S. at 68.

Brit argues that Erwin was improperly joined and should be disregarded as a defendant, curing the jurisdictional defect. *See*

4

Rec. Docs. 1 ¶¶ 16-23; 14 at 4-10. "To demonstrate improper joinder of resident defendants, the removing defendants must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). When, as here, a removing defendant "rel[ies] on the second prong, . . . the threshold question . . . is whether there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* (citing *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)). In answering this question, a "court may conduct a Rule 12(b)(6)-type analysis, looking at the allegations of the complaint" or, when "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder[,]" a court "may . . . pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573. "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.*

The removing defendant confronts a challenging task when arguing that another defendant has been improperly joined.

> The burden of proof is on the removing party. In deciding whether a party was improperly joined, we resolve all contested factual issues and ambiguities of state law in favor of the plaintiff. As the effect of removal is to deprive the state court of an action properly before it,

5

> removal raises significant federalism concerns. The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand.

*Gasch*, 491 F.3d at 281-82. Accordingly, "[w]e do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308-09 (5th Cir. 2005). With this framework in mind, the Court will address Brit's two arguments for fraudulent joinder.

### A. Failure to State a Claim

Brit argues that joinder of Erwin was improper because Hero LLP cannot state a claim against Erwin. *See* Rec. Doc. 14 at 4-7. In Louisiana, "an insurance agent owes a duty of 'reasonable diligence' to his customer." *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 2009-2161, p. 7 (La. 7/6/10); 42 So. 3d 352, 356. "This duty of 'reasonable diligence' is fulfilled when the agent procures the insurance requested." *Id.*

> [A]n insured has a valid claim against the agent when the insured demonstrates that: 1) the insurance agent agreed to procure the insurance; 2) the agent failed to use reasonable diligence in attempting to procure the insurance and failed to notify the client promptly that the agent did not obtain insurance and 3) the agent acted in such a way that the client could assume he was insured.

*Id.* at 356-57. Accordingly, "[i]t is the insured's responsibility to request the type of insurance coverage, and the amount of coverage needed;" the agent is not "obligat[ed] to spontaneously

6

or affirmatively identify the scope or the amount of insurance coverage the client needs." *Id.* at 359. Also, "it is [the] insured's obligation to read the policy when received, since the insured is deemed to know the policy contents." *Id.*

That being said, an agent can "assume[] a duty beyond acting with reasonable diligence," such as when "'the agent's specific knowledge of the insured's individual situation'" implicates "'aspects of the [insurance] policies . . . not within'" a lay person's knowledge. *Id.* at 358 (citing *Parker v. Lexington Ins. Co.*, No. 06-4156, 2006 WL 3328041, at *3 (E.D. La. Nov. 15, 2006)); *see also Offshore Prod. Contractors, Inc. v. Republic Underwriter's Ins. Co.*, 910 F.2d 224, 229-30 (5th Cir. 1990) (same); *Belmont Commons, LLC v. Axis Surplus Ins.*, 569 F. Supp. 2d 637, 644 (E.D. La. 2008) (same); *Sasser-Ford v. State Farm Fire & Cas. Co.*, 2012-1375, pp. 4-6 (La. App. 3 Cir. 4/3/13); 112 So. 3d 968, 970-72 (same).

In their complaint, Hero LLP alleges that they "emphasized [to Erwin] that it needed comprehensive quality insurance coverage in order to protect its business interests both for commercial property and for commercial general liability." Rec. Doc. 1-1 ¶ 23. Hero LLP "advised Erwin of the nature of its business, including that the business encompassed repair, remodeling and construction of buildings on its various properties." *Id.* ¶ 24. Hero LLP claims that Erwin recommended changes to its pre-existing insurance

7

policies and told them that it "did not need a fire insurance policy covering its various business properties because this [risk] was covered under other policies it had procured." *Id.* ¶ 26. Erwin also allegedly "represented that it had procured the insurance that [Hero LLP] requested." *Id.* ¶ 27. Based on this advice, Hero LLPs allegedly "discontinued a dwelling fire policy that it had" with another insurance company. *Id.*

Hero LLP did not discover that this type of loss might not be covered by its insurance policies until its claim was rejected. *See id.* ¶¶ 10-11. Hero LLP claims that it did not realize that the relevant property might not be covered when it reviewed the policies because the relevant property is "included [on a] lengthy list[] of additional property locations." *Id.* ¶ 28. Hero LLP further alleges that Erwin still did not alert it to the lack of insurance coverage after becoming "specifically aware of the ongoing construction" at the relevant piece of land. *Id.* ¶ 29.

Under a Rule 12(b)(6) standard, *see Int'l Energy Ventures Mgmt., LLC v. United Energy Grp.*, 818 F.3d 193, 200-07 (5th Cir. 2016), a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff," *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016). Based on the allegations in Hero LLP's state court pleadings, Hero LLP has stated a claim against Erwin. Hero LLP asked Erwin to procure insurance for its business

and described the types of risks that its business was exposed to, including risk associated with construction. Erwin agreed to procure said insurance and made specific recommendations, including that Hero LLP discontinue a fire insurance policy because it was redundant to the newly-purchased insurance. Erwin told Hero LLP that he had procured all of the requested insurance. If Hero LLP was actually underinsured, then Erwin may have breached his duty to act with reasonable diligence.

Brit argues that Erwin did not have a duty to advise about the need to insure projects that were under construction because Erwin did not assume a higher duty of care; per Brit's understanding, Erwin procured the policies that Hero LLP requested. *See* Rec. Doc. 14 at 4-6. But Brit does not accurately characterize Hero LLP's allegations. Hero LLP alleges that it told Erwin it wanted to insure their entire business, which included construction projects. *See id.* ¶¶ 23-24. Hero LLP then alleges that Erwin recommended cancelling a preexisting fire insurance policy because the new policies would cover that risk. *See id.* ¶ 26. This may not be true. But at this stage of the proceedings, under a Rule 12(b)(6) standard, the Court assumes that these well-pleaded factual allegations are true. And if true, these allegations state a claim that Erwin breached a duty owed to Hero LLP by offering inaccurate advice about the protection afforded by the new insurance policies. *See cf. Isidore Newman*, 42 So. 3d at

9

358. Such a showing is sufficient to defeat Brit's fraudulent joinder argument.

Brit's fraudulent joinder argument would fare no better if the Court pierced the pleadings and conducted a summary inquiry. *See Smallwood*, 385 F.3d at 573. "[A] summary inquiry is appropriate *only* to identify the presence of discrete and *undisputed* facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74 (emphasis added). Brit relies on an affidavit from James McLachlan, one of Erwin's employees. In that affidavit, McLachlan states that he asked, in a March 2016 email to Jason Dillman, whether Hero LLP wanted to buy builder's risk insurance on the property. *See* Rec. Doc. 1-5 ¶ 6. At best, Brit's affidavit creates issues of fact about when Hero LLP learned that a construction project on the property would not be insured. *See* Rec. Doc. 1-5.

Hero LLP has provided its own affidavits that contradict Erwin's characterization of the underlying events. *See* Rec. Docs. 9-2; 9-3. In one affidavit, Hero LLP's General Partner, George Hero, states that he first learned that the damaged property might not be covered in February 2018. *See* Rec. Doc. 9-2 ¶ 9. In another affidavit, Dillman attests that he understood McLachlan's March 2016 email to offer builder's insurance to him in his personal capacity because he was considering purchasing the relevant property from Hero LLP. *See* Rec. Doc. 9-3 ¶¶ 3-8. Therefore, while

10

the parties agree that McLachlan sent an email to Dillman about builders insurance, they disagree about the significance of that email, namely whether it informed or should have informed Hero LLP that a construction project on the relevant property was not covered by Hero LLP's existing insurance policies.

Attempting to resolve this factual dispute is not appropriate at this juncture as it would "carr[y] a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits." *Smallwood*, 385 F.3d at 574. This is especially true because it may involve a credibility determination. When piercing the pleadings to determine the propriety of joinder, the burden remains on the removing party and "[a]ny contested issues of fact and any ambiguities of state law must be resolved in the plaintiff's favor." *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004); *see also Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003) (same). A court's "inability to make the requisite decision" about the viability of a plaintiff's claim against a non-diverse defendant "in a summary manner itself points to an inability of the removing party to carry its burden." *Smallwood*, 385 F.3d at 574.

**B. Peremption**

Brit also argues that Erwin was fraudulently joined because Hero LLP's claims are perempted. In Louisiana, actions against

insurance agents are subject to one-year and three-year peremptive periods. *See* La. Rev. Stat. § 9:5606.

> No action for damages against any insurance agent, . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

*Id.* § 9:5606(A). These peremptive periods "may not be renounced, interrupted, or suspended." *Id.* § 9:5606(C).

Here, Hero LLP originally purchased the insurance policies in 2013 and filed suit in 2018. *See* Rec. Doc. 1-1 ¶¶ 20-21, 25. Therefore, claims arising from the original purchase would be preempted. *See* La. Rev. Stat. § 9:5606. But Hero LLP renewed its policies every year, most recently in June 2017. *See* Rec. Doc. 1-1 ¶ 8. "In general, renewals of insurance policies do not operate to restart peremption." *Fid. Homestead Ass'n v. Hanover Ins. Co.*, 458 F. Supp. 2d 276, 280 (E.D. La. 2006). "However, renewals can be the basis of separate torts, if the complained of conduct constitutes separate and distinct acts, which give rise to immediately apparent damages." *Id.* "The inquiry is whether the actions of the insurance agents at the time of renewal can be

12

construed to constitute an act separate from the initial policy procurement." *Id.*

In the context of motions to remand for improper joinder, courts generally remand when it appears that the insurance agent offered new or additional advice about insurance coverage when the insured renewed its coverage. *See, e.g.*, *id.* at 279-81 (concluding that joinder was proper and remand appropriate because insured had yearly meeting with insurance agent to discuss scope of insurance coverage); *S. Athletic Club, LLC v. Hanover Ins. Co.*, No. 06-2605, 2006 WL 2583406, at *2-3 (E.D. La. Sept. 6, 2006) (same); *Maloney Cinque, LLC v. Pac. Ins. Co.*, No. 07-4512, 2008 WL 609956, at *2-4 (E.D. La. Mar. 3, 2008) (same). Conversely, courts generally conclude that joinder was improper when the insured renewed its policy without consulting its agent about the substance of the policy or without making any changes to the scope of the coverage. *See, e.g.*, *Arnie v. State Farm Fire & Cas. Co.*, No. 06-3416, 2006 WL 3068819, at *2-3 (E.D. La. Oct. 25, 2006) (explaining that defendant insurance agent was fraudulently joined and remand therefore unnecessary because plaintiff had no further contact with insurance agent after initially procuring coverage); *Gomez v. Allstate Ins. Co.*, No. 06-8274, 2007 WL 1166150, at *2 (E.D. La. Apr. 17, 2007) (same). Ultimately, this case falls into the former category and remand is appropriate because Hero LLP continued to

solicit Erwin's advice about insuring the business when deciding whether to renew its insurance policies.

Because Hero LLP's complaint includes limited facts about the insurance renewals, *see* Rec. Doc. 1-1 ¶ 8, the Court may examine other evidence in the record "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74. Again, Brit cannot carry its burden to show that Erwin was fraudulently joined, because the record demonstrates that there are contested issues of fact with respect to the nature of the insurance renewals. *See Guillory*, 434 F.3d at 308 (District courts conducting a fraudulent joinder analysis "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.").

The present factual record (comprised primarily of affidavits and documents) indicates that Hero LLP consistently discussed its insurance needs with Erwin after initially buying insurance in 2013. Hero LLP reapplied each year, and then met with Erwin to go over the proposed policies before renewing. *See* Rec. Docs. 12-14, 12-15, 12-16. Erwin was in regular contact with Hero LLP's employees about insuring specific buildings and pieces of land, making changes to the policies as new insurance needs arose. *See* Rec. Doc. 12-16. Erwin even had multiple conversations with one of

Hero LLP's employees about the piece of property at issue in this lawsuit. *See* Rec. Doc. 1-5. But, as discussed previously, Hero LLP and Erwin offer conflicting affidavits about whether those conversations made Hero LLP aware, or should have made Hero LLP aware, that Hero LLP's risk in that property was not insured. *Compare* Rec. Doc. 1-5, *with* Rec. Docs. 9-2, 9-3. A motion to remand for improper joinder is not the proper forum for resolving such a factual dispute. *See McKee*, 358 F.3d at 334. Doing so would involve delving deep into the nature of the communications between Hero LLP and Erwin, which are the essence of Hero LLP's claim against Erwin. *See Isidore Newman Sch.*, 42 So. 3d at 356-59. Therefore, joinder of Erwin as a defendant was proper and remand is appropriate; this Court lacks subject matter jurisdiction because there is incomplete diversity.

Though the Court concludes that remand is appropriate, Hero LLP is not entitled to an award of costs and fees. *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). "[A] court may award attorney's fees when the removing party lacks an objectively reasonable basis for removal." *Am. Airlines, Inc. v. Sabre, Inc.*, 694 F.3d 539, 542 (5th Cir. 2012). "'[T]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and

15

imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.'" *Id.* (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005)). Brit's arguments that Erwin was fraudulently joined to defeat diversity jurisdiction were not objectively unreasonable. Brit raised valid concerns about the viability of Hero LLP's claims against Erwin. Though Brit did not ultimately satisfy its heavy burden in arguing for fraudulent joinder, there is no indication that Brit removed the above-captioned matter to delay the instant litigation.

    New Orleans, Louisiana, this 31st day of August, 2018.

                                          _____
                                          SENIOR UNITED STATES DISTRICT JUDGE